# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2025

Lyle W. Cayce
Clerk

No. 24-30294

UNITED STATES OF AMERICA,

*Plaintiff—Appellant*,

*versus*

QUWINTON NORMAN,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:22-CR-50-1

_____

Before ELROD, *Chief Judge*, and JONES and STEWART, *Circuit Judges*.

JENNIFER WALKER ELROD, *Chief Judge*:

Quwinton Norman successfully moved to suppress evidence obtained from a house and a vehicle pursuant to a search warrant. Because the good-faith exception applies, we REVERSE and REMAND.

I

Detective Jeff Scroggins of the Livingston Parish Sheriff's Office believed that Quwinton Norman was supplying methamphetamine to a narcotics distributor, Fleet Wallace. Scroggins applied for search warrants for Norman's apartment, where Norman had conducted a drug transaction

with Wallace, and a nearby house, where Norman spent the night after the transaction. Scroggins's two-and-a-half-page affidavit in support recounted the investigation and included summaries of text messages between Norman and Wallace and observations of Norman's activities at each location. A Louisiana state court judge issued both warrants. Officers then searched the house and Norman's vehicle, which was in the garage at the time. They found large amounts of drugs, about $64,000 in cash, and other incriminating items.

Norman was indicted on federal charges of possession with intent to distribute methamphetamine and cocaine. He moved to suppress the evidence found at the house, arguing that the affidavit in support of the warrant failed to establish probable cause and was bare bones. The district court held a hearing and granted the motion. The government appealed.

II

When reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*. *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002).

Because the evidence at issue was obtained pursuant to a search warrant, "[f]irst, we determine whether the good-faith exception to the exclusionary rule applies." *Id.* Under that exception, "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). We review the reasonableness of an officer's reliance *de novo*. *Id.* at 321. This analysis "ordinarily depend[s] on an examination of the affidavit." *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003) (quoting *United States v. Gant*, 759 F.2d 484, 487–88 (5th Cir. 1985)).

The good-faith exception does not apply if the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Satterwhite*, 980 F.2d at 320 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). Such "'[b]are bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* at 321. Simply put, bare-bones affidavits "do not detail any facts, they allege only conclusions." *United States v. Morton*, 46 F.4th 331, 337 (5th Cir. 2022) (en banc).

Norman argues, and the district court held, that Scroggins's affidavit was bare bones because it did not provide facts showing a nexus between the house and evidence of Norman's drug distribution. "Facts in the affidavit must establish a nexus between the house to be searched and the evidence sought." *Payne*, 341 F.3d at 400. "The nexus may be established through direct observation or through 'normal inferences as to where the articles sought would be located.'" *Id.* (quoting *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)). In the good-faith context, we ask "whether officers objectively could reasonably believe that there was" such a nexus. *United States v. Bell*, 832 F. App'x 298, 301 (5th Cir. 2020) (citing *Satterwhite*, 980 F.2d at 320).

Here, Scroggins's affidavit was not bare bones. Rather than containing "wholly conclusory statements," it provided the following "facts and circumstances" relevant to the required nexus. *See Satterwhite*, 980 F.2d at 321. First, the text messages between Wallace and Norman indicated that Wallace was "purchasing large quantities of narcotics from [Norman], several times a week." The texts told Wallace to meet Norman "at his apartment, his residence, and nearby locations to purchase illicit narcotics." Second, after a drug transaction with Wallace, Norman drove directly to the house at issue and pulled into the garage, and no one was seen leaving that

night.  Third, the day after the drug deal, Norman drove from the house to his apartment twice within one hour in the vehicle he used for the drug deal. He also continued "travel[ing] between the apartments, the residence, and to other nearby locations."  Fourth, officers saw one of Norman's known associates arrive at the house in a car believed to be used by Norman and referenced in the texts to Wallace.

Given these facts, officers could reasonably rely on the state judge's conclusion that there was a nexus between evidence of Norman's drug trafficking and the house.  *See Bell*, 832 F. App'x at 301.  The state judge could draw reasonable, common-sense inferences from the affidavit.  *See United States v. Robinson*, 741 F.3d 588, 597–98 (5th Cir. 2014); *United States v. Huerra*, 884 F.3d 511, 516 & n.16 (5th Cir. 2018).  Here, Norman presumably had the proceeds from the drug transaction with him at the house that night.  Thus, it was reasonable to infer that those proceeds were likely in the house or its garage.  It was also reasonable to infer that the "residence" referenced in the texts with Wallace was probably the house at issue.

Scroggins's affidavit presented sufficient facts for the state judge to "draw reasonable inferences" and make an independent probable-cause determination.  *See Robinson*, 741 F.3d at 597–98; *Satterwhite*, 980 F.2d at 321.  It was not a bare-bones affidavit, so the good-faith exception applies. And because the good-faith exception applies, "our analysis ends" and "we need not reach the question of probable cause."  *Cavazos*, 288 F.3d at 709 (quoting *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)).

\*       \*       \*

For the reasons stated above, we REVERSE the district court's order excluding evidence obtained from the house and the vehicle and REMAND for further proceedings.